UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL NO. 04-44-DCR
CIVIL NO. 06-459-DCR

UNITED STATES OF AMERICA                                    PLAINTIFF


VS:                            RECOMMENDED DISPOSITION


RICHARD DAVID THORNTON                                      DEFENDANT

* * * * *

Richard David Thornton, proceeding *pro se*, filed the instant 28 U.S.C. § 2255 petition.  *See* DE# 106.  The District Court, which sentenced Thornton, referred the matter to the undersigned for a recommended disposition.  *See* DE# 107.  The United States has moved to dismiss the § 2255 petition based on a collateral-attack waiver contained in Thornton's underlying plea agreement.  *See* DE# 108.  The Government seeks summary enforcement of the waiver, and does not address the merits of Petitioner's claims.  Thornton has responded to the motion, and the matter is now ripe for review.  *See* DE# 110.  For the reasons stated herein, the Court recommends that the District Court GRANT the Government's motion to dismiss and DENY Petitioner's § 2255 motion to vacate, set aside, or correct sentence.[1]

---

[1]

Petitioner's Supporting Memorandum, submitted with the § 2255 petition, also references an "attached Petition for Appointment of Counsel."  *See* DE# 106, Supporting Memo at 1.  The petition for counsel, however, does not appear in the record.

Regardless, the Court would deny this request.  Absent a discovery or hearing issue, the appointment of counsel in a habeas proceeding rests in the Court's discretionary assessment of whether the interests of justice require such appointment.  *See* 18 U.S.C. § 3006A; *see also Doyle v. Haney*, 2007 WL 647560, at *1 (W.D. Ky. Feb. 23, 2007).  The record, as it stands in this matter, provides no basis for appointing counsel herein under that standard.

# I.  Factual Background

The underlying facts that led to Thornton's arrest and conviction appear in Petitioner's plea agreement with the United States.  *See* DE# 48, Plea Agreement.  According to the stipulated factual account, Petitioner entered into an agreement with Scott Sturgeon and others to transport marijuana for distribution from Tucson, Arizona to the Eastern District of Kentucky.  The conspiracy began in January of 2003 and continued through March of 2004.  *See id*. ¶ 4(a).

Under the agreed arrangement, Thornton would acquire the marijuana, and  Sturgeon would transport it to Kentucky by motor vehicle.  On February 25, 2004, authorities intercepted Sturgeon in Kansas.  On that particular trip, Sturgeon was transporting marijuana from Arizona to Owensboro, Kentucky, where Sturgeon would await further instruction from Thornton.  Sturgeon generally revealed that Lexington was the ultimate destination and distribution point for the intercepted marijuana.  *See id*. ¶ 4(b)-(c).

Sturgeon further explained to law enforcement that he had delivered marijuana shipments to locations in or around London and Lexington, Kentucky on prior occasions.  Sturgeon also stated that an individual in Perry County, Kentucky received more than 100 kilograms of marijuana for distribution and resale.  In exchange for his services, Sturgeon collected a portion of the transported marijuana.  *See id*. ¶ 4(b).

An investigation into these activities led to a four count indictment in May of 2004 that charged Petitioner and other coconspirators.  *See* DE# 6, Indictment.  The indictment named Thornton in the first three counts.  *See id*.  Pursuant to a plea agreement with the United States, Petitioner agreed to plead guilty to Count 1.  *See* Plea Agreement ¶ 1.  That count charged Thornton

and others with conspiracy to possess and distribute more than 100 kilograms of marijuana from January of 2003 through March of 2004.  *See* Indictment, Count 1.

The plea agreement also restated the underlying facts.  *See* Plea Agreement ¶ 4.  Petitioner agreed that the factual account accurately represented his conduct and established the essential elements of the Count 1 offense, which the agreement outlined.  *See id.* ¶¶ 3-4.  The agreement further provided that the United States could prove the stipulated facts beyond a reasonable doubt. *See id.* ¶ 4.

In addition, Petitioner expressly agreed to an appellate and collateral-attack waiver under the plea bargain.  The waiver stated:

> Defendant waives the statutory right to appeal the guilty plea, conviction, and any lawful sentence.  The defendant further waives the right to collaterally attack the guilty plea, conviction, and any lawful sentence in this matter.

*Id.* ¶ 13.

The plea agreement did not outline specific sentencing terms.  *See id.* ¶ 6.  However, the agreement did state that Petitioner's statutory penalty range was "not less than 10 years nor more than LIFE imprisonment."  *See id.* ¶ 7 (emphasis in original).  The agreement explained that Petitioner was subject to an "enhanced" penalty range because Thornton had a prior felony drug trafficking conviction.  *See id.*

In the plea agreement's final provision, Petitioner and his attorney acknowledged that counsel had fully explained the agreement, that Petitioner understood the terms, and that Petitioner entered into the agreement voluntarily.  *See id.* ¶ 16.

The District Court rearraigned Thornton on July 30, 2004. The Court placed Petitioner under oath and fully assessed Thornton's competency to enter a plea. *See* DE# 95, Rearraignment Hearing at 4-7. At the hearing, Petitioner represented to the Court that he had reviewed the plea agreement, discussed the agreement with counsel, and understood its terms before signing. *See id.* at 9-10.

The United States then summarized the plea agreement. In relevant part, the prosecutor specifically explained that: the agreement lists the essential offense elements; Thornton acknowledges the accuracy of the factual account stated therein; the United States could prove the stipulated facts beyond a reasonable doubt; the charge involves more than 100 kilograms of marijuana; Thornton agrees to waive his right to appeal and collaterally attack the guilty plea, conviction, or any lawful sentence; and that, by signing the agreement, Thornton indicates that his "plea is free and voluntary." *See id.* at 10-12. The prosecutor also noted that "no agreement exists as to . . . defendant's sentence," and stated that Thornton's "penalty range is . . . not less than ten years, no more than life in prison." *See id.* at 10. Petitioner and his counsel affirmed that the Government accurately summarized the plea agreement terms. *See id.* at 12. Thornton further acknowledged that he was not threatened or forced into entering the agreement. *See id.* at 12-13.

Following the United States' summary, the District Court again addressed the maximum statutory penalty. The Court stated:

> THE COURT: The maximum penalty for a violation of the offense that's charged in Count One is contained in the plea agreement. And I believe it's set forth in paragraph 8. I want to go over that with you as well and make sure that you are clear about the statutory penalty in the case.
>
> Now, having been previously convicted of a drug trafficking felony, the penalty range is enhanced, and it's not less than ten years in prison and no more than life . . . .

4

> Now, do you understand that those are the maximum penalties that
> could be imposed by statute?
>
> DEFENDANT THORNTON: I do, your Honor.

*Id*. at 13-14.

The District Court also reviewed with Petitioner specific plea agreement terms. Most

notably, the District Court addressed the waiver provision in the following exchange:

> THE COURT:   All right, there's also some waiver language
> contained in your plea agreement, and I want to go over that with you
> as well.  Of course, it's not unusual to have waiver language in a plea
> agreement such as this.  But I need to advise you that if the language
> were not included in the plea agreement, of course, you could appeal
> any conviction or sentence in the case to the United States Court of
> Appeals for the Sixth Circuit.  However, in this particular case, you
> have waived the right to do that.  You understand and agree to that?
>
> DEFENDANT THORNTON:  Yes, sir.
>
> THE COURT:  In paragraph 13, the paragraph specifically provides
> that you waive the right to appeal the guilty plea, conviction, and any
> lawful sentence, and also that you waive the right to collaterally
> attack the guilty plea, conviction, and any lawful sentence.  Now, do
> you understand that if you waive the right to collaterally attack
> something you're giving up the right to file a separate lawsuit to
> challenge it?  You understand that?
>
> DEFENDANT THORNTON: I do, your Honor.

*Id*. at 17.

Finally, the District Court repeated the Count 1 charge, and asked Thornton to explain, in

his own words, "what it was [that Thornton] did to be guilty of that offense."  *See id*. at 20.

Petitioner stated that he and Sturgeon had been associates "for quite a few years," and that they

"agreed to travel the marijuana from Arizona to here in Kentucky."  *See id*. at 20-21.  Thornton

further acknowledged that the dates, locations, and the amount of marijuana ("more than 100

5

kilograms") referenced in the plea agreement were accurate. *See id.* at 21. Again, Petitioner agreed to the full factual account contained in the plea agreement, and conceded that the United States could prove the stipulated facts beyond a reasonable doubt. *See id.*

The District Court sentenced Petitioner to 60 months imprisonment and 8 years of supervised release. *See* DE# 64, Judgment. Thornton's final sentence reflected a downward departure, pursuant to § 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), which reduced his 120 month mandatory minimum sentence by half. *See* DE# 77, Sentencing Hearing at 31, 53. Petitioner's sentence also fell below his advisory guideline range.[2] Pursuant to *United States v. Koch*, 2004 WL 1870438, at *1 (6th Cir. Aug. 13, 2004), the District Court imposed a 90 month alternative sentence. *See* Sentencing Hearing at 54.

Following imposition of Petitioner's sentence, the clerk advised Thornton of his appellate rights:

> THE CLERK: You are now notified by this Court that you have a right to appeal your case to the 6th Circuit Court of Appeals, which proper appeal will review this case and determine that there has or has not been an error of law. However, a defendant may waive those rights as part of a plea agreement, and you have entered into a plea agreement which waives some or all of your rights to appeal the conviction. Such waivers are generally enforceable but if you believe

---

[2]

In determining Thornton's guideline range, the District Court initially assessed Petitioner with a base offense level of 26. *See* Sentencing Hearing at 9. Because of his management and supervisory responsibilities during the conspiracy, Thornton received a two-level adjustment under § 3B1.1(c). This resulted in an adjusted offense level of 28. The Court then reduced this figure by three levels due to Thornton's acceptance of responsibility. Thus, Petitioner's total offense level was 25. *See id.*

Based on his criminal history, the District Court determined that Thornton had eight criminal history points. Consequently, Thornton fell within the fourth criminal history category. Thornton's criminal history category and final offense level resulted in an advisory guideline range of 84 to 105 months. *See id.*

> the waiver is unenforceable you can present that theory to the appellate court.

*Id*. at 55.  However, Thornton cites the District Court's later comment, at the end of the sentencing hearing, that there were no waivers in the plea agreement:

> THE COURT:  I believe I misspoke when I indicated that one or more of the agreements had the waiver in them.  These plea agreements don't have them, but that would not alter the alternative sentence that would be imposed.  I needed to state that for the record.

*Id*. at 56.  As a result of these remarks, Petitioner believes that the waiver provision is unenforceable.

Petitioner tried to appeal his conviction and sentence to the Sixth Circuit.  Thornton claimed he had a right to appeal based on the District Court's comment at sentencing and because the Supreme Court issued *United States v. Booker* the day after Petitioner's sentencing hearing.  *See United States v. Thornton*, No. 05-5141, at 2 (6th Cir. June 5, 2006).  The Sixth Circuit, however, found Thornton's appellate waiver valid and declined to reach the merits.  *See id*. at 3.  The Court explained:

> Nothing in the district court record suggests that Thornton's assent to the waiver provision was unknowing or involuntary.  Thornton stated at the plea hearing not only that he understood the terms of the plea agreement including the waiver of his right to appeal, but that his plea was voluntary, and that no threats or other promises had been made.  A defendant such as Thornton who expressly represents in open court that his guilty plea is voluntary may not ordinarily repudiate his statements thereafter.

*Id*. (citations omitted).

In addition, the Sixth Circuit specifically rejected Thornton's arguments to set aside the waiver.  The Court explained that "misadvice at sentencing" concerning the right to appeal does not render an appellate waiver unenforceable.  *See id*.  Likewise, the Sixth Circuit stated that a "change in the law wrought by *Booker* does not render Thornton's plea unknowing or involuntary."  *Id*.

7

Instead, Thornton "accepted" that risk by entering into the plea agreement. *See id.* Thus, the Sixth Circuit did not disturb, and indeed enforced, the waiver provision.

The instant § 2255 petition followed Thornton's abortive appeal effort. The United States has moved to dismiss the petition based on the waiver in Thornton's underlying plea agreement. The motion seeks summary enforcement of the waiver and does not address the merits of Petitioner's claims. Petitioner has responded to the motion. Thornton's § 2255 petition and reply raise the following claims:

> a) Counsel failed to investigate exculpatory evidence;
>
> b) Counsel verbally assaulted Petitioner and coerced Petitioner's guilty plea;
>
> c) Counsel provided erroneous sentencing advice concerning Petitioner's eligibility for an 18 month residential drug abuse program (RDAP);
>
> d) Counsel provided erroneous sentencing advice based on the application of the sentencing guidelines, and thus induced Petitioner's guilty plea;
>
> e) Counsel provided erroneous advice concerning Petitioner's motion to resentence;
>
> f) Counsel failed to establish the correct drug quantity;
>
> g) Appellate counsel did not provide a copy of the appellate brief to Petitioner in a timely manner;
>
> h) Petitioner's sentencing process was unconstitutional because Petitioner received alternative sentences; and
>
> i) The waiver provision is unenforceable because of misadvice by the District Court at Petitioner's sentencing hearing.[3]

---

[3]

The final two claims first appear in Petitioner's reply brief. Because Thornton proceeds *pro se,* all of Petitioner's claims and arguments are entitled to a comparatively lenient construction by the Court. *See Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (holding that "allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief").

Below, the Court addresses Thornton's collateral-attack waiver and its application in this matter.  The Court separately considers on the merits the habeas claim(s) that are not subject to the waiver provision.

## II.  Waiver Analysis

### A.

"A defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement."  *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001).  Here, Petitioner's plea agreement contains a collateral-attack waiver:

> The Defendant waives the statutory right to appeal the guilty plea, conviction, and any lawful sentence.  The defendant further waives the right to collaterally attack the guilty plea, conviction and any lawful sentence in this matter.

Plea Agreement ¶ 13.

The language of the waiver is not unconditional.  The waiver provides that Thornton "waives the right to collaterally attack . . . any **lawful** sentence."  *Id*. (emphasis added).  According to the Sixth Circuit, the adjective "lawful" is a material term, and it allows the reviewing court to determine whether the challenged sentence complies with the law.  *See United States v. Dellheim*, 187 Fed. Appx. 573, 576 (6th Cir. 2006).  As a result, Thornton's waiver provision is "effectively nugatory," to the extent it applies to sentencing claims, and does not actually function as a waiver.  *See id*.

In this case, Petitioner raises only one claim that questions the lawfulness of his sentence.  In his reply brief, Thornton contends that the sentencing process was somehow unconstitutional because the Court imposed alternative sentences.  *See* DE# 110, Petitioner's Reply at 1 (designated as argument "h" above).  Although the merits are questionable, the argument is not within the scope

9

of the waiver provision text.  Assuming that the timing of the claim is not an issue, the Court must address the substance of this argument.

Otherwise, the waiver provision *theoretically* extends to Petitioner's remaining claims.  The waiver of the right to collaterally attack the guilty plea or conviction is unconditional.  *See* Plea Agreement ¶ 13.  Here, although some of the arguments do involve erroneous sentencing advice, the remaining claims allege ineffective assistance of counsel and basically challenge the guilty plea or underlying plea agreement.  As such, the Court considers whether the waiver provision operates to bar these claims.

### B.

Under Sixth Circuit authority, "a defendant's **informed and voluntary** waiver of the right to collaterally attack a conviction and sentence is enforceable."  *In re Acosta*, 480 F.3d 421, 421 (6th Cir. 2007)(emphasis added).  The Court finds that the record plainly establishes an "informed and voluntary" waiver in this case.[4]

---

[4]

The Sixth Circuit reached essentially the same conclusion when it enforced Thornton's appellate waiver.  After evaluating the record, the Court of Appeals found that Petitioner had knowingly and voluntarily assented to the *waiver provision*, which by its terms includes both the appellate and collateral-attack waivers.  *See United States v. Thornton*, No. 05-5141, at 3 (6th Cir. June 5, 2006).  In addition, the Sixth Circuit specifically rejected Thornton's argument that the District Court's purported "misadvice" at the sentencing hearing rendered the waiver unenforceable.  *See id.*

The Sixth Circuit's analysis seems equally applicable on habeas review, especially since the opinion's analysis is directed toward the *collective* waiver provision.  *See id.* ("Nothing in the record . . . suggests that Thornton's assent to the *waiver provision* was unknowing or involuntary.")(emphasis added).  That decision also rejects the only habeas argument that directly attacks the waiver in this proceeding, which is the "misadvice" at sentencing.  *See id.*  As such, the decision on appeal may preclude Thornton, who is now proceeding collaterally, from relitigating the validity of his waiver.  *See, e.g.*, *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999)("It is equally well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances.")

However, even if an informed and voluntary waiver evaluation is a predicate to waiver

By signing the plea agreement, Petitioner acknowledged that counsel had explained the agreement and that he understood its terms, including the waiver provision. *See* Plea Agreement ¶ 16. At rearraignment, Petitioner again affirmed before the District Court that he had read the plea agreement, reviewed it with counsel, and understood its provisions. *See* Rearraignment Hearing at 9-10. Thornton also listened as the Assistant United States Attorney summarized the terms of the plea agreement, which referenced the waiver provision. *See id.* at 11 ("He further waives the right to collaterally attack the guilty plea, conviction, and any lawful sentence."). Petitioner and his counsel both agreed that the Government's summary was accurate. *See id.* at 12.

In addition, the District Court personally addressed Petitioner and specifically informed him of the waiver provision, in satisfaction of Rule 11. *See* Fed. R. Crim. P. 11(b)(1)(N). The District Court repeated the waiver language and explained its meaning:

> THE COURT: In paragraph 13, the paragraph specifically provides that you waive the right to appeal the guilty plea, conviction, and any lawful sentence, and also that you waive the right to collaterally attack the guilty plea, conviction, and any lawful sentence. *Now, do you understand that if you waive the right to collaterally attack something you're giving up the right to file a separate lawsuit to challenge it*? You understand that?

*See* Rearraignment Hearing at 17 (emphasis added). Thornton again acknowledged that he understood and assented to the consequences of the waiver provision. *See id.*

All of Petitioner's responses at rearraignment were voluntary and under oath, and the District Court assured Thornton's competency at the start of the hearing. Thornton's solemn declarations in open court "carry a strong presumption of verity" and "constitute a formidable barrier" in subsequent

---

enforcement at all stages of review, the Court independently finds, for the reasons provided below, that Thornton validly agreed to the collateral-attack waiver herein.

collateral proceedings.  *See Blackledge v. Allison*, 97 S.Ct. 1621, 1629 (1977).  Considering the

presumptive force of Petitioner's repeated and uncontradicted acknowledgments at rearraignment,

the Court can only conclude, on this record, that Thornton's waiver was "informed and voluntary."

*See In re Acosta*, 480 F.3d at 421.

C.

Even though Thornton's waiver was "informed and voluntary," the United States cannot

assert that the waiver provision *categorically* bars all claims and issues on collateral review.  Rather,

the Sixth Circuit distinguishes cases that involve "issues a defendant has validly agreed not to appeal

or attack collaterally from those that go to the very validity of the guilty plea."  *See In re Acosta*, 480

F.3d at 421.  In *Acosta*, the Sixth Circuit explained:

> [I]n cases where a defendant argues that his plea was not knowing or
> voluntary, or was the product of ineffective assistance of counsel ...
> it would be entirely circular for the government to argue that the
> defendant has waived his right to an appeal or a collateral attack
> when the substance of his claim challenges the very validity of the
> waiver itself.

*Id*. (citations omitted).

Thus, the *Acosta* Court posited: "[C]laims that a guilty plea was not knowing and voluntary,

or was the product of ineffective assistance of counsel . . . generally cannot be waived."  *Id*. at 421

n. 2.  The logic in *Acosta* also applies to arguments that attack the underlying waiver provision.  *See*

*id*. at 422.  As a result of *Acosta*, collateral-attack waivers do not apply in a rigid and mechanical

fashion to bar claims that challenge the validity of the guilty plea or the waiver itself.[5]

---

[5]

In addition, the Sixth Circuit has recognized that arguments concerning subject matter
jurisdiction are not waivable on direct appeal or habeas review.  *See Short v. United States*, 471 F.3d
686, 691 (6th Cir. 2006).  Borrowing from appellate waiver precedent, the *Acosta* Court also suggests
that a defendant cannot waive the right to collaterally attack a sentence that exceeds the statutory

12

At the same time, however, simply accepting a defendant's blanket characterization of plea/waiver invalidity, and thus opening the merits, may substantially dilute the benefit and economy behind the concept of waiver.  Some courts have reached a balance by screening § 2255 claims, as to plea/waiver invalidity, for merit.  *See, e.g., Reneau v. United States*, 2006 WL 3019762, at *4 (S.D.N.Y. 2006)(holding "waiver will be enforced where the record reveals that the waiver was knowing and voluntary and that the ineffective assistance claim has no merit"); *Harris v. United States*, 380 F.Supp.2d 278, 282 (S.D.N.Y. 2005)("Merely asserting ineffective assistance of counsel, however, does not automatically render a plea agreement unenforceable . . . Where the record reveals that the waiver was knowing and voluntary, and that there is no merit to the ineffective assistance claim, the waiver should be enforced.").  Similarly, Sixth Circuit precedent does not require a full review of the merits if the plea/waiver claim has **no basis** in the record.  *See In re Acosta*, 480 F.3d at 421 (indicating, in the context of a challenged guilty plea, that waiver enforcement is proper if "the defendant **did not articulate a basis** for attacking the validity of his plea.")(emphasis added); *Jones v. United States*, 120 Fed. Appx. 594, 596 (6th Cir. 2005)(enforcing waiver provision to bar claim of ineffective assistance that attacked the "waiver itself" because the claim had "**no basis**" in the record)(emphasis added).

Here, Petitioner raises at least one argument that attacks the validity of the waiver provision, and he asserts several ineffective assistance of counsel claims that nominally challenge the guilty plea or the underlying plea agreement.  Per *Acosta* and *Jones*, the Court must consider whether these claims have any legal or factual basis in the record.  If not, the Court may then enforce the waiver provision and preclude further review of these arguments.  *See In re Acosta*, 480 F.3d at 421; *Jones*,

---

maximum.  *See In re Acosta*, 480 F.3d at 421 n. 2.

120 Fed. Appx. at 596.   The Court may evaluate and enforce the waiver if "the conclusiveness of [the] waiver of his right to bring a § 2255 petition is beyond question."  *See Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001).

As noted, Petitioner asserts that the collateral-attack waiver is unenforceable because, at the sentencing hearing, "the Court stated that there were no waivers in [the] plea agreement."[6]  *See* Petitioner's Reply at 2 (designated as argument "i" above).  Although the plea agreement and plea colloquy did address and explain the waiver provision, Thornton believes the statements at the end of the sentencing hearing are controlling and invalidate the waiver.  In support, Petitioner cites a number of cases holding that an oral sentencing pronouncement prevails over a written sentencing judgment when the two authorities are in conflict.  *See id.*

This argument is baseless and contrary to *relevant* Sixth Circuit precedent.  Because courts cannot participate in the plea agreement process, plea agreements are not subject to inadvertent or intentional modification and revision by the district judge.  *See United States v. Fleming*, 239 F.3d 761, 764-65 (6th Cir. 2001); *see also United States v. Rice*, 145 Fed. Appx. 155, 158-59 (6th Cir. 2005).  Thus, the terms in the waiver provision in Thornton's plea agreement were impervious to the District Court's cited comments in this case.  *See Fleming*, 239 F.3d at 764-65; *see also Rice*, 145 Fed. Appx. At 158-59.  Petitioner's cases, which involve conflicting sentencing pronouncements, are inapposite.

---

[6]

Again, Petitioner first raised this claim on direct appeal, and the Sixth Circuit flatly rejected the argument.  *See United States v. Thornton*, No. 05-5141, at 2-3 (6th Cir. June 5, 2006).  Consequently, the decision on appeal arguably precludes Thornton from relitigating this issue on collateral review.  *See* note 4, *supra*; s*ee also Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

In addition, it appears that the District Court's comments could not have impacted the informed and voluntary nature of Petitioner's waiver. Petitioner signed the plea agreement and pled guilty, pursuant to the agreement, at his rearraignment. The record from rearraignment firmly establishes that Thornton understood and voluntarily consented to the waiver provision. *See* Rearraignment Hearing at 11-12, 17. The purported misadvice occurred at Thornton's sentencing hearing, which was more than five months **after** Thornton's rearraignment. *See Fleming*, 239 F.3d at 765 ("[O]nce an appeal waiver is established to be knowing and intelligent, the waiver may not be held unenforceable because of a district court's erroneous statements at a **subsequent proceeding**.")(emphasis added)(citing *United States v. One Male Juvenile*, 1997 WL 381955, at \*4 (4th Cir. July 11, 1997)); *see also Rice*, 145 Fed. Appx. at 159 (same). As such, this particular argument as to waiver validity has no legal basis or merit. Therefore, the waiver applies. *See Jones*, 120 Fed. Appx. at 596.

The § 2255 petition itself also raises a number of putative ineffective assistance claims that implicate the guilty plea or the underlying plea agreement. *Acosta* states that these arguments "**generally** cannot be waived." *See In re Acosta*, 480 F.3d at 421 n. 2 (emphasis added). According to *Acosta*, waiver enforcement, as to these claims, is proper only if "the defendant did not articulate a basis for attacking the validity of his plea." *See id*. at 421.

In this case, Petitioner contends that counsel verbally assaulted and coerced him in a holding area prior to Petitioner's sentencing hearing. *See* DE# 106, Petitioner's Supporting Memo at 5-6 (designated as argument "b" above). According to Thornton, he informed counsel that "he feared the mandatory minimum 120 [to] life [sentence] because the drug quantity was wrong." *See id*. at 5. Petitioner explains that counsel, in response, threatened to withdraw, stated that Petitioner would

receive additional "time" if he did not enter the courtroom, and "promised" a sentence in relation to Thornton's 84 to 105 month guideline range.  *See id*.  "Without these compelling threats and promises," Thornton claims he "would not have entered the plea agreement."  *Id*.

Additional tendered arguments focus specifically on counsel's alleged erroneous sentencing advice and promises at the pre-sentence meeting in question.  Thornton explains:

> Counsel told Movant that cooperating with the Government would lead to a departure from the guideline range of 84-105 months.  He said that the Government would not pursue the mandatory minimum 120-life [sentencing range] that Movant feared.  His advice to accept the plea induced Movant to enter the courtroom believing that he would receive an 84 month sentence reduced by 50% for substantial assistance or 42 months, with an 18 month reduction for the RDAP [residential drug abuse program].  This would have been a total sentence of 26 months with almost 5 months of good time for a total of 21 months.

*Id*. at 7 (designated as argument "d" above).

Because the District Court actually sentenced Thornton in relation to the 120 month mandatory minimum, Petitioner now argues that counsel's advice misled and "induced" him to plead guilty and to "accept" the plea agreement.[7]  *See id*.  Thornton also explains that he is ineligible for the residential drug abuse program (RDAP) because of a pending parole violation charge in Tennessee.  Petitioner claims that counsel was aware of the pending violation, but negligently failed to consider its impact on RDAP eligibility.  *See id*. at 6-7 (designated as argument "c" above).

The Court finds that these claims are legally and factually insufficient to challenge Petitioner's guilty plea or underlying plea agreement.  Petitioner signed the plea agreement on July

---

[7]
    As counsel expected, however, the District Court did sustain a 50% downward departure based on Thornton's substantial assistance to authorities, which resulted in a 60 month sentence.  *See* Sentencing Hearing at 31, 53.

30, 2004 and pled guilty at rearraignment that same day.  The record from rearraignment establishes that Thornton knowingly and voluntarily pled guilty.  *See* Rearraignment Hearing at 12-13 (acknowledging repeatedly that he voluntarily and knowingly entered the plea agreement and guilty plea); *see also id*. at 22.  The alleged threats, promises, and sentencing advice by counsel, on the other hand, are temporally unrelated to the guilty plea.  By Petitioner's own admission, the threats and promises occurred on the day of Petitioner's sentencing hearing, which was more than five months **after** the plea proceeding.  *See* Petitioner's Supporting Memo at 3, 5-7.  As a matter of sequence, the allegations, even if true, do not legitimately challenge Thornton's knowing and voluntary guilty plea at rearraignment.

Moreover, counsel's inaccurate sentencing advice and promises would not have entitled Petitioner to withdraw from the plea agreement or guilty plea at that juncture of the case.  *See United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990) ("[M]ere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement."); *see also United States v. Cinnamon*, 112 Fed. Appx. 415, 419 (6th Cir. 2004).  The District Court apprised Petitioner of this fact at rearraignment:

> THE COURT: . . . . [I]n addition, you would not be able to withdraw your plea on the ground that your attorney's prediction or your belief as to the guideline range might be inaccurate?  You understand that?
>
> DEFENDANT THORNTON: I do.
>
> \*   \*   \*
>
> THE COURT: . . . . And if the sentence that would be imposed would be more severe than you expect, you would still be bound by your plea agreement and you wouldn't have an opportunity to withdraw it at that time?  Do you understand that as well?
>
> DEFENDANT THORNTON: Yes, sir.

17

*See* Rearraignment Hearing at 17-18; *see also id*. at 12-13 ("THE COURT: Has anyone told you that you would receive a specific sentence in exchange for entering into the plea agreement? DEFENDANT THORNTON: No, they haven't.").

In sum, these arguments do not articulate a valid legal or factual basis for attacking Thornton's guilty plea. Thus, the waiver bars these claims. *See In re Acosta*, 480 F.3d at 421.

Petitioner also claims that he "could have requested to withdraw his plea" if he had proceeded with his original motion to resentence. *See* Petitioner's Supporting Memo at 9 (designated as argument "e" above). After the Supreme Court issued its decision in *Booker*, counsel initially advised Petitioner to file a motion to resentence. Counsel subsequently instructed Petitioner to withdraw that motion, believing the motion would result in a lengthier sentence. Thornton states that the alternative sentencing scheme in this matter confused him. He argues the motion to resentence, if it had continued, would have clarified the sentencing process and enabled him to withdraw his guilty plea. Petitioner's belief that he could withdraw his guilty plea at a resentencing hearing is baseless and procedurally illogical. In addition to contradicting the District Court's rearraignment admonitions about withdrawal, even if a resentencing hearing were proper, the subject matter of such hearing would only address the appropriate sentence under *Booker*. There is no authority to suggest that Petitioner could also withdraw his guilty plea at the hearing, which would be procedurally out-of-step with the limited purpose of a resentencing hearing. *Cf. United States v. Bradley*, 194 Fed. Appx. 341, 342-44 (6th Cir. 2006)(discussing mechanism to enforce alternative sentence, which was limited to sentencing issues). As such, this argument has no legal basis and fails.

Finally, Thornton charges that counsel failed adequately to investigate exculpatory evidence. Petitioner claims that he provided counsel with "letters" and evidence that addressed the

"untruthfulness" of Scott Sturgeon (who was cooperating with the government), dates, drug quantities, and the identities of other coconspirators. *See* Petitioner's Supporting Memo at 5 (designated as argument "a" above). Petitioner's argument focuses primarily on drug quantity. He contends "there was no proof that there was over 100 [kilograms of marijuana] and even more proof" that the crime involved less than that amount. *See id.*

The Court finds no basis for this claim. The plea agreement and Petitioner's sworn and voluntary representations at rearraignment directly refute Thornton's current drug quantity allegations. Petitioner's acknowledgments in the plea agreement and at the plea proceeding specifically and repeatedly established that the charged offense properly involved more than 100 kilograms of marijuana. *See* Plea Agreement ¶¶ 3, 4, & 8; Rearraignment Hearing at 11 (summarizing that "the parties agree that the amount of marijuana in this matter is more than 100 kilograms"), 20 (repeating Count 1 charge and drug quantity); 21 ("THE COURT: . . . . Now, the plea agreement also makes reference to an amount of marijuana; more than 100 kilograms of marijuana. Do you agree with that amount as well?  DEFENDANT THORNTON: As far as I can recall, sir."); *see also id.* at 21 (conceding that factual account in plea agreement–including the 100 kg attribution--is accurate and could be proved beyond a reasonable doubt by the United States.). As noted, these verified statements to the District Court carry a strong presumption of truthfulness. *See Blackledge v. Allison*, 97 S.Ct. 1621, 1629 (1977); *see also United States v. Rennick*, 2007 WL 738645, at *2 (6th Cir. Mar. 12, 2007).

Furthermore, there is no evidence that exculpatory material actually existed in this matter. Although Petitioner received the case file from his attorney, there is no proffer or summary of the letters or exculpatory evidence that Thornton allegedly provided to counsel. *See* DE# 106, Exhibit

1. Because this argument has no factual support and is inconsistent with the record, the Court finds that this claim fails to avoid the waiver provision. *See In re Acosta*, 480 F.3d at 421.

Although each of the foregoing claims nominally challenges the waiver provision or the guilty plea, the Court finds that the claims have no legal or factual footing. As such, the claims do not warrant further review, and the waiver should apply. *See id.*; *See Jones*, 120 Fed. Appx. at 596. As in *Davila*, the waiver's conclusiveness is "beyond question."

The waiver categorically bars the remaining arguments that fall within the scope of the waiver provision, but do not attack the waiver itself or the guilty plea.[8] The sentencing claim, which challenges the constitutionality of the alternative sentencing scheme and is not within the waiver provision, is the only argument that the Court must address on the merits.

### III.  Merit Analysis

### A.

The Government's motion to dismiss did not respond to the substance of Thornton's habeas claims. However, the sentencing claim is the only argument procedurally fit for review, and that

---

[8]     There are only two claims in the habeas petition that fall within the scope of the waiver text but do not theoretically attack the guilty plea or the waiver provision (designated as arguments "f" and "g" above). These arguments allege ineffective assistance because trial counsel failed to establish the correct drug quantity and because appellate counsel did not provide a copy of the appellate brief to Petitioner in a timely manner.

The waiver plainly applies to these claims, which do not impugn the guilty plea or waiver. However, the arguments, on their merits, are baseless. The plea agreement terms and the record at arraignment clearly establish, and verify, that the charged offense involved more than 100 kilograms of marijuana. Likewise, the alleged errors by appellate counsel could not have prejudiced Thornton since the Court of Appeals enforced the waiver provision and dismissed the appeal. As such, these ineffective assistance of counsel claims could not satisfy the *Strickland* standard.

argument does not raise even a colorable legal issue.  As such, the Court is prepared to address the merits of that claim at this juncture and without further briefing by the  United States.

## B.

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law.  *See* 28 U.S.C. § 2255.  To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S.Ct. 1710, 1721-22 (1993)).  To prevail on a motion alleging non-constitutional error, the petitioner must establish a "fundamental defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process." *Watson*, 165 F.3d at 488 (citing *Hill v. United States*, 82 S.Ct. 468, 471  (1962)).

In addition, the *pro se* nature of Thornton's habeas petition results in a comparatively lenient construction by the Court.  *See Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (holding that "allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief").

## C.

Because the District Court imposed alternative sentences, Petitioner contends that the "sentencing process" was unconstitutional.  *See* Petitioner's Rely at 1 (designated as argument "h" above).  Although the argument should have appeared in the initial § 2255 petition, the collateral attack waiver does not bar review because the "lawfulness" of the sentence is at issue.  *See* Plea

Agreement ¶ 13 (providing Thornton "waives the right to collaterally attack . . . any **lawful** sentence")(emphasis added); *see also* Rule 2(b)(1) of the Rules Governing § 2255 Proceedings ("The *motion* must specify all the grounds for relief available to the moving party.")(emphasis added). Even though the Court can review the claim, the argument is plainly meritless and fails.

The Sixth Circuit itself recommended the alternative sentencing model applied by the District Court in this matter. *See United States v. Koch*, 2004 WL 1870438, at *1 (6th Cir. Aug. 13, 2004). At the time, federal courts were awaiting a definitive ruling by the Supreme Court in *United States v. Booker*, which challenged the then-mandatory nature of the federal sentencing guidelines. While the *Booker* decision was pending, the Sixth Circuit instructed district courts to continue sentencing defendants in accordance with the guidelines, and, "[i]n the interest of judicial economy," to announce an alternative sentence that treated the guidelines as "advisory only." *See id*.

Thus, the Sixth Circuit explicitly sanctioned the sentencing scheme at issue, and there is no authority to indicate that the recommended sentencing model violated federal law. As such, Petitioner's claim does not warrant habeas relief. *See Watson*, 165 F.3d at 488. Further, based on the prior direct appeal and the sentence actually imposed, the alternative-sentence model in no way harmed Petitioner.

## IV.  Evidentiary Hearing

Petitioner did not request an evidentiary hearing in this matter. Even if he had, the Court finds that the record and arguments, as presented, would not require an evidentiary hearing.

A district court may permit additional discovery, in the context of a habeas proceeding, if the "habeas petitioner presents specific allegations showing reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate." *Lott v.*

*Coyle*, 261 F.3d 594, 602 (6th Cir. 2001).  The reviewing court need not conduct a hearing, however, where the petitioner's allegations are inherently incredible, refuted by the record, or conclusory.  *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

Because the record is adequate in this case, and because no substantial factual conflict or avenue for relief appears in the record, the Court believes further discovery is not necessary.  Petitioner's § 2255 claims are without merit, as the record conclusively demonstrates.  *See Blanton*, 94 F.3d at 235.

### V.  Certificate of Appealability

A Certificate of Appealability may issue where the petitioner has made a "substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  This requires the movant to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000).  The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement.  *See* 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 262 F.3d 466, 467 (6th Cir. 2001)(requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability).

Petitioner has not made a "substantial showing" as to any claimed denial of rights.  The record establishes an informed and voluntary and thus enforceable waiver by Thornton.  In addition, Petitioner's other claims plainly lack merit irrespective of the waiver.  The Court recommends that the District Court refuse to certify any issues for appeal.

## VI.  Recommendation

For all of the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court GRANT the Government's motion to dismiss;

2) the District Court DENY, with prejudice, the motion to vacate, set aside, or correct sentence, *see* DE# 106; and

3) the District Court wholly refuse a certificate of appealability.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute.  As defined by § 636(b)(1) and local rule, within ten days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.  *See also* Fed. R. Civ. P. 72; Fed. R. Crim. P. 59.

This the 25th day of May, 2007.

Signed By:

*Robert E. Wier*   *REW*

United States Magistrate Judge